IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERALD JOSEPH LOVOI, <br><br> Plaintiff, <br><br> v. <br><br> DEVON ENERGY CORPORATION, DAVID A. HAGER, BARBARA M. BAUMANN, JOHN E. BETHANCOURT, ANN G. FOX, ROBERT H. HENRY, MICHAEL M. KANOVSKY, JOHN KRENICKI JR., ROBERT A. MOSBACHER, JR., DUANE C. RADTKE, KEITH O. RATTIE, and MARY P. RICCIARDELLO, <br><br> Defendants. | Civil Action No. _____ <br><br><br> **JURY TRIAL DEMAND** |

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Gerald Joseph Lovoi ("Plaintiff"), alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Devon Energy Corporation ("Devon" or the "Company") and Devon's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company and WPX Energy, Inc. ("WPX") through Devon's wholly owned subsidiary East Merger Sub, Inc. (the "Proposed Transaction").

1

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on November 5, 2020. The S-4 recommends that Devon stockholders vote in favor of the issuance of Devon common stock pursuant to the terms of the Merger Agreement (the "Stock Issuance"). The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Devon management, as well as the financial analyses conducted by J.P. Morgan Securities LLC ("JPMorgan"), Devon's financial advisor.

3.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Devon's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Devon's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

4.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Devon.

5.      Defendant Devon is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 333 W. Sheridan Ave., Oklahoma City, Oklahoma 73102. Devon common stock trades on NYSE under the ticker symbol

"DVN."

6. Defendant David A. Hager has been President and CEO of the Company since 2015 and a director of the Company since 2016.

7. Defendant Barbara M. Baumann has been a director of the Company since 2014.

8. Defendant John E. Bethancourt has been a director of the Company since 2014.

9. Defendant Ann G. Fox has been a director of the Company since 2019.

10. Defendant Robert H. Henry has been a director of the Company since 2010.

11. Defendant Michael M. Kanovsky has been a director of the Company since 1999.

12. Defendant John Krenicki Jr. has been a director of the Company since 2018.

13. Defendant Robert A. Mosbacher, Jr. has been a director of the Company since 2009.

14. Defendant Duane C. Radtke has been a director of the Company since 2000 and Chair of the Board in 2019.

15. Defendant Keith O. Rattie has been a director of the Company since 2019.

16. Defendant Mary P. Ricciardello has been a director of the Company since 2007.

17. Defendants Hager, Baumann, Bethancourt, Fox, Henry, Kanovsky, Krenicki, Mosbacher, Radtke, Rattie and Ricciardello are collectively referred to herein as the "Board" or "Individual Defendants."

18. WPX is a Delaware corporation. WPX's principal executive offices are located at 3500 One Williams Center, Tulsa, Oklahoma 74172. WPX common stock trades on NYSE under the ticker symbol "WPX."

19. East Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Devon.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District and Devon is incorporated in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

23. Formed in 1971, Devon is an oil and gas company that operates in the U.S. The Company's oil production operations are focused in New Mexico, Wyoming, Oklahoma and Texas. In 2019, Devon produced 55 million barrels of oil, 219 billion cubic feet of gas and 28 million barrels of natural gas and generated revenues of $6.2 billion.

24. The Company entered into the Merger Agreement with WPX on September 26, 2020.

25. According to the press release issued on September 28, 2020 announcing the Proposed Transaction:

**Devon Energy and WPX Energy to Combine in Merger of Equals, Creating a**

**Leading Energy Company Focused on Generating Free Cash Flow and Return of Capital to Shareholders**

**KEY HIGHLIGHTS**

- Merger of equals creates a leading unconventional oil producer in the U.S.

- Builds a dominant Delaware Basin acreage position totaling 400,000 net acres

- All-stock transaction accretive to per-share metrics in year one and maintains financial strength

- Expect to achieve cost savings that will drive $575 million of annual cash flow improvements by year-end 2021

- Maintenance capital funding requirements in 2021 improve to $33 WTI and $2.75 Henry Hub pricing

- Enhanced operating scale accelerates transformation to a cash-return business model

- Combined company to implement "fixed plus variable" dividend strategy

- Dave Hager to serve as executive chairman of the board; Rick Muncrief to serve as president and CEO

**OKLAHOMA CITY & TULSA, Okla. – Sept. 28, 2020** – Devon Energy ("Devon") (NYSE: DVN) and WPX Energy ("WPX") (NYSE: WPX) today announced they have entered into an agreement to combine in an all-stock merger of equals transaction. The strategic combination will create a leading unconventional oil producer in the U.S., with an asset base underpinned by a premium acreage position in the economic core of the Delaware Basin. The combined company, which will be named Devon Energy, will benefit from enhanced scale, improved margins, higher free cash flow and the financial strength to accelerate the return of cash to shareholders through an industry-first "fixed plus variable" dividend strategy.

**TRANSACTION DETAILS**

Under the terms of the agreement, WPX shareholders will receive a fixed exchange ratio of 0.5165 shares of Devon common stock for each share of WPX common stock owned. The exchange ratio, together with closing prices for Devon and WPX on Sept. 25, 2020, results in an enterprise value for the combined entity of

5

approximately $12 billion. Upon completion of the transaction, Devon shareholders will own approximately 57 percent of the combined company and WPX shareholders will own approximately 43 percent of the combined company on a fully diluted basis.

The transaction, which is expected to close in the first quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by EnCap Investments L.P. own approximately 27 percent of the outstanding shares of WPX and have entered into a support agreement to vote in favor of the transaction. The closing of the transaction is subject to customary closing conditions, including approvals by Devon and WPX shareholders.

**CEO COMMENTARY**

"This merger is a transformational event for Devon and WPX as we unite our complementary assets, operating capabilities and proven management teams to maximize our business in today's environment, while positioning our combined company to create value for years to come," said Dave Hager, Devon's president and CEO. "Bringing together our asset bases will drive immediate synergies and enable the combined company to accelerate free cash flow growth and return of capital to shareholders. In addition to highly complementary assets, Devon and WPX have similar values, and a disciplined returns-oriented focus, reinforcing our belief that this is an ideal business combination."

"This merger-of-equals strengthens our confidence that we will achieve all of our five-year targets outlined in late 2019," said Rick Muncrief, WPX's chairman and CEO. "The combined company will be one of the largest unconventional energy producers in the U.S. and with our enhanced scale and strong financial position, we can now accomplish these objectives for shareholders more quickly and efficiently. We will create value for shareholders of both companies through the disciplined management of our combined assets and an unwavering focus on profitable, per-share growth."

**STRATEGIC RATIONALE**

- **Accelerates cash-return business model** – The merger accelerates Devon's transition to a business model that prioritizes free cash flow generation over production growth. With this highly disciplined strategy, management is committed to limiting reinvestment rates to approximately 70 to 80 percent of operating cash flow and restricting production growth to 5 percent or less annually. Free cash flow will be deployed toward higher dividends, debt reduction and opportunistic share repurchases.

- **Immediately accretive to financial metrics** – The transaction is expected to be immediately accretive to all relevant per-share metrics in the first year, including: earnings, cash flow, free cash flow, and net asset value, as well as accretive to return on invested capital. The combination is also expected to enhance the company's credit profile and decrease its overall cost of capital.

- **Maintains strong balance sheet and liquidity** – The all-stock transaction ensures the combined company will retain a strong balance sheet with a pro forma net debt-to-EBITDAX ratio of 1.6x on a trailing 12-month basis and is targeting a leverage ratio of approximately 1.0x over the longer term. The combined company will also have excellent liquidity with approximately $1.7 billion of cash on hand and $3 billion of undrawn capacity on its credit facility expected at closing.

- **Increases scale and diversification** – The transaction creates one of the largest unconventional oil producers in the U.S. with production of 277,000 barrels per day. The combined company will benefit from a premier multi-basin portfolio, headlined by the world-class acreage position in the Delaware Basin that is 400,000 net acres and accounts for nearly 60 percent of the combined company's total oil production. The Delaware Basin acreage is geographically diversified between southeast New Mexico and Texas, with only 35 percent of the leasehold on federal land. The consolidated Delaware footprint provides a multi-decade inventory of high-return opportunities at combined activity levels of 17 drilling rigs. The balance of the portfolio will be diversified across high-margin, high-return resource plays in the Anadarko Basin, Williston Basin, Eagle Ford Shale and Powder River Basin.

- **Drives significant cost synergies** – Cost savings from initiatives underway in the second half of 2020 and synergies resulting from the merger are expected to drive $575 million in annual cash flow improvements by year-end 2021. These cost improvements are expected to be attained through operational efficiencies, general and administrative savings and reduced financing expense. The net present value of these cost synergies over the next 5 years equates to more than $2 billion of value. The all-stock transaction structure allows shareholders of both Devon and WPX to benefit from the cost synergies and significant upside potential of the combined company.

7

- **Supports implementation of a "fixed plus variable" dividend strategy** – With the business scaled to consistently generate free cash flow, Devon is initiating a new dividend strategy that pays a fixed dividend and evaluates a variable distribution on a quarterly basis. The fixed dividend is paid quarterly at a rate of $0.11 per share and the target payout is approximately 10 percent of operating cash flow. In addition to the fixed quarterly dividend, up to 50 percent of the remaining free cash flow on a quarterly basis will be distributed to shareholders through a variable distribution. This enhanced dividend strategy is effective immediately upon close of the transaction.

- **Shared commitment to ESG excellence** – Both Devon and WPX share an uncompromising commitment to ESG leadership, employee safety and environmental responsibility. Consistent with this commitment, the combined company will pursue measurable ESG targets, including methane intensity reduction, and will have progressive actions and practices in place to advance inclusion and diversity. Further, ESG metrics will be incorporated into the compensation structure and the board will monitor ESG goals and results.

- **Combines complementary cultures** – Devon and WPX share similar values and this combination is designed to optimize the strengths of both companies' operating philosophies to drive the continued growth and success of the business.

**LEADERSHIP AND HEADQUARTERS**

Following the merger, the board of directors will consist of 12 members, 7 directors from Devon and 5 from WPX including the lead independent director. Dave Hager will be appointed executive chairman of the board, and Rick Muncrief will be named president and CEO. The combined company's executive team will include Jeff Ritenour as executive vice president and chief financial officer, Clay Gaspar as executive vice president and chief operating officer, David Harris as executive vice president and chief corporate development officer, Dennis Cameron as executive vice president and general counsel, and Tana Cashion as senior vice president of human resources. The combined company will be headquartered in Oklahoma City.

**PRELIMINARY PRO FORMA 2021 OUTLOOK**

Detailed forward-looking guidance for the full-year 2021 will be provided upon closing of the transaction. Based on current supply and demand dynamics, product inventory levels, and other leading economic indicators, the company expects to design capital activity plans to maintain base production.

The maintenance capital requirements to keep oil production flat in 2021 versus 2020 fourth-quarter exit rates of greater than 280,000 barrels per day is estimated at approximately $1.7 billion. Pro forma for cost synergies, these maintenance capital requirements in 2021 are estimated to be funded at $33 WTI and $2.75 Henry Hub pricing.

### B. The Materially Incomplete and Misleading S-4

26. The Individual Defendants must disclose all material information regarding the Proposed Transaction to Devon stockholders so that they can make a fully informed decision whether to vote in favor of the Stock Issuance.

27. On November 5, 2020, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff and Devon stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Stock Issuance.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

28. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of JPMorgan's fairness opinion, JPMorgan reviewed "certain internal financial analyses and forecasts" for Devon and WPX that were "provided by the management of Devon." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Devon's management provided to the Board and JPMorgan.

29. Notably, Defendants failed to disclose who prepared Devon's projected cash flows: Devon or JPMorgan. The S-4 also fails to disclose operating cash flows (as used in JPMorgan's *Public Trading Multiples Analysis*), category-by-category cash flows corresponding to

9

JPMorgan's *Net Asset Value Analysis*, through the end of each respective category's economic life, unlevered free cash flows through 2025, as calculated using the formula provided in the Citigroup Global Markets Inc. *Discounted Cash Flow Analysis*, cash flow per share, stock-based compensation expense, and utilization of net operating loss carryforwards. The S-4 further fails to disclose the "certain other adjustments" made to calculate adjusted EBITDAX, as referred to in footnote (2) on page 90 of the S-4. This omitted information is necessary for Devon stockholders to make an informed decision on whether to vote in favor of the Stock Issuance.

> ***Materially Incomplete and Misleading Disclosures Concerning JPMorgan's Financial Analyses***

30. With respect to the *Public Trading Multiples Analysis,* the S-4 fails to disclose the objective selection criteria for each company, as well as the multiples for FV/2021E Adj. EBITDAX, FV/2022E Adj. EBITDAX, EV/2021E OCF and EV/2022E OCF for each selected company. The S-4 also fails to disclose the basis for selecting multiple reference ranges of 3.75x to 5.50x for FV/2021E Adj. EBITDAX, 3.25x to 4.75x for FV/2022E Adj. EBITDAX, 2.00x to 3.25x for EV/2021E OCF, and 1.75x to 2.50x for EV/2022E OCF.

31. With respect to the *Net Asset Value Analysis,* the S-4 fails to disclose the basis for selecting discount rates of 10.75% to 12.75%. The S-4 further fails to disclose the general and administrative expenses, hedges, taxes and net operating losses as used to adjust projected asset-level cash flows, as well as the discount rates utilized for each of these categories. The S-4 also fails to disclose how stock-based compensation expense was treated in the analysis.

32. With respect to the *Value Creation Analysis*, the S-4 fails to disclose whether the "reduction" in net operating losses refers to their utilization over time or a different kind of reduction. If the latter, the S-4 fails to disclose an explanation of the reduction and its quantification.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

33. The S-4 also fails to disclose material information concerning the process leading to the Proposed Transaction. For example, Defendant Hager met with Richard Muncrief, WPX's CEO and chairman, on July 10, 2020. One year earlier, they had met and discussed a possible combination but quickly decided against it. Yet somehow Defendant Hager had enough information about WPX to discuss Mr. Muncrief becoming CEO and Defendant Hager becoming executive chairman of a combined company. The S-4 fails to disclose whether Defendant Hager had authority from the Board to engage in such discussions. Similarly, the S-4 fails to disclose whether Defendant Hager informed the Board of the nature of this discussion at the meeting on July 17, 2020.

34. The S-4 notes that Defendant Hager had numerous discussions with Mr. Muncrief between July 17, 2020 and July 28, 2020. However, the S-4 does not disclose how many discussions took place, when they took place, and the nature of the items discussed at each time. Similarly, the S-4 states that Defendant Hager and Mr. Muncrief spoke over the phone "approximately each week" in August and September 2020. The S-4 does not disclose how many discussions took place, when they took place, and the nature of the items discussed during each call. Board size and organizational leadership was discussed in each of these time periods, and the S-4 does not disclose whether Defendant Hager had the authority of the Board to engage in such discussions.

35. At numerous Board meetings "certain members" of Devon's management were in attendance. Yet the S-4 does not disclose the identities of these members, including those who attended the Board meeting on July 17, 2020, July 31, 2020, August 21, 2020, September 4, 2020, September 11, 2020, September 16, 2020, September 25, 2020, and September 26, 2020. This

information is important for stockholders because some members of Devon's senior management will retain their positions in the combined company. Their interests in employment at a larger company, with potentially higher compensation, conflict with the interests of the Board.

36. JPMorgan provided the Board with its analyses at various meetings throughout the process. The S-4 does not disclose these analyses, including the industry and WPX overview provided at the Board meeting on August 21, 2020, the preliminary financial views presented at the September 4, 2020 Board meeting, the financial metrics or a combination with potential strategic partners as presented at the September 16, 2020 Board meeting, and the preliminary financial analyses discussed at the Board meeting on September 25, 2020.

37. At the September 16, 2020 Board meeting, JPMorgan discussed other potential strategic partners for a business combination. The S-4 does not disclose the number of potential partners considered or discussed, nor whether the Board considered a combination with a different party.

38. The S-4 notes that the WPX board of directors discussed Devon's projected financial performance at a meeting on September 9, 2020. The S-4 does not disclose whether Devon provided WPX with financial projections and, if so, when those projections were provided and whether the differ from the projections provided in the S-4. Similarly, the S-4 does not state whether Devon received financial projections from WPX, when, and whether those projections differ from the projections provided in the S-4.

39. This information is necessary to provide Company stockholders a complete and accurate picture of the process leading to the Proposed Transaction and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material

information, Devon stockholders are unable to make a fully informed decision in connection with the Stock Issuance and face irreparable harm, warranting the injunctive relief sought herein.

40. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

41. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

42. Further, the S-4 indicates that on September 26, 2020, JPMorgan reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view, to Devon stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning JPMorgan's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

43. Plaintiff is immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Defendants have filed the S-4 with the SEC with the intention of soliciting Devon stockholder support for the Stock Issuance. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

46. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Devon, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the financial analyses performed by JPMorgan in support of its fairness opinion; and (iii) the sales process.

49.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that JPMorgan reviewed and discussed its financial analyses with the Board during various meetings including on September 26, 2020, and further states that the Board relied upon JPMorgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

50.     The misrepresentations and omissions in the S-4 are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Stock Issuance. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>

**On Behalf of Plaintiff against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Devon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Devon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

55.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

    A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Devon stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

    B.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, and any vote on the Stock Issuance, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

    C.    In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

    D.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

    E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 16, 2020

           **O'KELLY & ERNST, LLC**

           */s/ Ryan M. Ernst*
           Ryan M. Ernst (#4788)
           824 N. Market St., Suite 1001A
           Wilmington, DE 19801
           (302) 778-4000
           rernst@oelegal.com

           *Counsel for Plaintiff*

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514